ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| BECKMAN COULTER PUERTO RICO, INC.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO DE SAN JUAN; MUNICIPIO DE SAN JUAN<br><br>Recurridos<br><br>ISLA LAB PRODUCTS, LLC<br><br>Proponente Seleccionado<br><br>SIEMENS HEALTHCARE DIAGNOSTICS, INC.<br><br>Otro Proponente | KLRA202400393 | *Revisión Judicial* procedente de la Junta de Subastas del Municipio de San Juan<br><br>Caso Núm.: RFP2024-011<br><br>Sobre: Impugnación de Adjudicación de Requerimiento de Propuestas (RFP) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 10 de octubre de 2024.

Comparece ante nos Beckman Coulter Puerto Rico, Inc. (Beckman). Nos solicita la revocación de la Determinación Final emitida el 11 de julio de 2024 por la Junta de Subastas del Municipio de San Juan (Junta de Subastas). Como consecuencia de lo anterior, Beckman nos solicita que descartemos la propuesta del licitador agraciado y le adjudiquemos la *buena pro*.

Por los fundamentos que expondremos a continuación, adelantamos la confirmación de la Determinación Final recurrida.

**I.**

De los autos ante nuestra consideración se desprende que, el 19 de diciembre de 2023 el Municipio de San Juan publicó en un periódico de circulación general un anuncio para el RFP-2024-011 sobre *Arrendamiento de Equipos de Química e Inmunología para los*

*Laboratorios Ubicados en Cinco (5) Centros de Diagnóstico y Tratamiento (CDT) y el Hospital Municipal del Departamento de Salud del Municipio de San Juan.*

El 22 de enero de 2024, la Junta de Subastas celebró una Reunión Pre-Subasta, no compulsoria, a la que asistieron tres licitadores. A saber, Beckman, Isla Lab Products, LLC (Isla Lab) y Siemens Healthcare Diagnostics, Inc. (Siemens). Por otro lado, el 26 y 30 de enero de 2024 la Junta de Subastas realizó visitas compulsorias a las facilidades.

Cercano a estas fechas, el RFP-2024-003 fue objeto de los siguientes *adendum*:

1. *Adendum #1* de 19 de enero de 2024, sobre respuestas a preguntas de los licitadores.[1]
2. *Adendum #2* de 22 de enero de 2024, sobre respuestas a preguntas de los licitadores.[2]
3. *Adendum #3* de 23 de enero de 2024, sobre respuestas a preguntas de los licitadores.[3]
4. **Adendum #4 de 1 de febrero de 2024**, sobre respuestas a preguntas de los licitadores y aclaraciones sobre los pliegos del RFP.**[4]**
5. *Adendum #5* de 5 de febrero de 2024, sobre respuestas a preguntas de los licitadores.[5]
6. **Adendum #6 de 6 de febrero de 2024**, sobre respuestas a preguntas de los licitadores y cambio de fecha de entrega de propuestas y acto de Apertura del 21 de febrero de 2024.[6]
7. **Adendum #7 de 8 de febrero de 2024**, sobre respuestas a preguntas de los licitadores.[7]

El 21 de febrero de 2024, se realizó el Acto de Apertura de las propuestas para el RFP 2024-011. A este evento comparecieron los licitadores Beckman, Isla Lab y Siemens.[8] Con dos propuestas viables, la Junta de Subastas comenzó el proceso de evaluación. Isla

---

[1] Apéndice, pág. 350.
[2] Apéndice, págs. 351-352.
[3] Apéndice, págs. 353-355.
[4] Apéndice, pág. 356.
[5] Apéndice, págs. 361-362.
[6] Apéndice, págs. 363-364.
[7] Apéndice, págs. 365-366.
[8] Siemens presentó un "*No Bid*", por lo que no fue considerada en el proceso de evaluación.

Lab presentó una sola oferta, mientras que Beckman presentó dos alternativas (Alternativa A y Alternativa B).

Resulta necesario señalar que desde el 30 de septiembre de 2015 hasta el 30 de julio 2021, Beckman le arrendó los equipos, servicios o productos relacionados al equipo de laboratorio de rutina e inmunología que se ofrecen en las facilidades médicas del Sistema de Salud del Municipio de San Juan[9]. Específicamente, el equipo arrendado es *Access 2*. De igual forma, desde el 12 de mayo de 2022, Beckman ofrece el servicio de mantenimiento, reparación, piezas y labor para las máquinas de laboratorio *Access 2* arrendadas precisamente por Beckman.[10] De manera que, el Municipio de San Juan utilizó las maquinas *Access 2* desde el 2016.

El 11 de julio de 2024, la Junta de Subastas emitió *Notificación del Acuerdo o Determinación Final Sobre RFP-2024-2011* donde luego de resumir las ofertas sometidas ante su consideración, le adjudicó la buena pro a Isla Lab.[11] De la *Determinación Final* se colige que Beckman obtuvo una puntación total de **63.38%** correspondiente a la Alternativa A y una puntuación total de **65.00%** correspondiente a la Alternativa B. Por su parte, Isla Lab obtuvo una puntuación total de **89.83%**.

Aclaró la Junta de Subastas que, aun cuando la propuesta de Isla Lab no resultó ser la más económica y al evaluar la totalidad de las circunstancias, Isla Lab ofertó otros elementos que mejor atienden las necesidades del Municipio de San Juan. De manera que, la Junta de Subastas entendió que la oferta de Isla Lab beneficiaría al interés público ya que brindó equipo actualizado para

---

[9] Del portal de la Oficina del Contralor de Puerto Rico surge el contrato 2016-B00043, sobre "*Arrendamiento de Equipo de Química, Rutina e Inmunología para el Departamento de Salud del Municipio Autónomo de San Juan*". Tomamos conocimiento judicial conforme a la Regla 201 de Evidencia, 32 LPRA Ap. IV, R. 201.

[10] Del portal de la Oficina del Contralor de Puerto Rico surge el contrato 2022-002206, sobre "*Contrato de Mantenimiento de Equipo*". Tomamos conocimiento judicial conforme a la Regla 201 de Evidencia, 32 LPRA Ap. IV, R. 201.

[11] Apéndice, págs. 1-20.

ejecutar las funciones propias de los servicios de salud en las facilidades del Municipio de San Juan.

Según surge de la *Determinación Final,* Beckman obtuvo una puntuación de **0 en el criterio de evaluación C sobre *Referencias Profesionales y/o Comerciales***, cuya puntuación máxima era de 6 puntos. La Junta de Subastas detalló en el pliego del RFP-2024-011 que para este criterio en las propuestas debía presentarse una lista con "un mínimo de 3 referencias de clientes en Puerto Rico **a los que el licitador haya suplido e instalado los equipos solicitados en este RFP**".[12] En la *Determinación Final,* la Junta de Subastas señaló que Beckman propuso el equipo DxC500AU en los renglones #1 y #3, el cual que se encuentra en *proceso de lanzamiento en el mercado de Puerto Rico.* De manera que, no existe experiencia de servicio en el mercado local. Sobre el equipo *Access 2* ofertado en los renglones #3 y #4, la Junta de Subasta puntualizó que el Municipio de San Juan experimentó deficiencias en el servicio técnico, particularmente con el apoyo telefónico con base en México. También señalaron que con frecuencia experimentan atrasos en el despacho de materiales. De igual forma, han confrontado problemas en el proceso de facturación que atrasan el proceso de pago por parte del Municipio de San Juan. Por todo esto, la Junta de Subastas le adjudicó 0 puntos a Beckman en este criterio. No obstante, la Junta de Subastas encontró que Isla Lab cumplió con las 3 referencias, por lo que la totalidad de 6 puntos.

De igual forma, Beckman obtuvo una puntuación de **0 en el criterio de evaluación D sobre *Especificaciones del Equipo***, cuya puntuación máxima era de 25 de puntos. La Junta de Subastas especificó en el pliego del RFP-2024-011 que lo importante era **que la[s] propuesta[s] contenga[n] TODAS las especificaciones**

---

[12] Apéndice, página 43. Énfasis en original.

**requeridas en el RFP**.[13] Más adelante, la Junta de Subastas expresó que "[d]e incumplirse, aunque sea un requisito y/o especificación de lo requerido en el RFP no se concederá puntuación alguna y se le concederá 0 puntos".

En su *Determinación Final,* la Junta de Subastas arguyó que la propuesta de Beckman para el ***Renglón #1*** no describía claramente el equipo y que la información provista no atendía el requerimiento de funcionalidad "*multitask*". En cuanto al ***Renglón #2***, Beckman ofertó el equipo *Access 2*. La Junta de Subastas dispuso que por experiencia directa con el equipo, sabía que *Access 2* no tenía la capacidad para producir reportes completos y otros. Para el ***Renglón #3***, Beckman presentó una Alternativa A y una Alternativa B. Para la ***Alternativa A***, la Junta de Subastas encontró que Beckman no contestó ciertas preguntas, que el equipo propuesto no proveía reportes de pruebas con la información del paciente cuando no hay LIS y que la literatura y visita realizada el laboratorio de Ponce desmentía cierta alegación. Para la ***Alternativa B***, la Junta de Subastas arguyó que el equipo propuesto no calculaba GFR y no posee funcionalidad "*multitask*". Para el ***Renglón #4***, Beckman también presentó una Alternativa A y una Alternativa B. Para la ***Alternativa A***, la Junta de Subastas notó que el equipo no proveía reportes de pruebas con la información del paciente cuando no hay LIS, el equipo tenía un menú limitado y que presentaba las mismas deficiencias señalas en el equipo propuesto para el ***Renglón #2***. De otro lado, la Junta de Subastas encontró que la ***Alternativa B*** presentaba las mismas deficiencias señalas en el equipo propuesto para el ***Renglón #2***. Por todo lo anteriormente expuesto, la Junta de Subastas concluyó que Beckman incumplió con al menos una de las especificaciones en

---

[13] Apéndice, página 43. Énfasis en original.

cada Renglón. Por ello, se le adjudicó una puntuación de 0. Isla Lab, por su parte, obtuvo una puntuación de 25 puntos para este criterio.

Por otro lado, Beckman obtuvo una puntuación de **0 en el criterio de evaluación H sobre *Valor Añadido***, cuya puntuación máxima era de 6 puntos. Sobre este criterio, la Junta de Subastas explicó en el pliego de subastas que valor añadido son aquellos "bienes o servicios propuestos que brindan un valor agregado al Municipio de San Juan, que no hubieran sido solicitados en las especificaciones de la [...] Solicitud de Propuesta, relacionados al servicio solicitado conforme a los requerimientos establecidos en el Pliego".[14] Con esto en mente, la Junta de Subastas solicitó que las ofertas de los licitadores detallaran y describieran claramente funcionalidades o elementos del sistema propuesto, que los distinguieran y que brindaran opciones de valor de su producto. La Junta de Subastas le otorgaría una puntuación de máxima de 6 puntos a razón de 2 puntos por cada elemento o funcionalidad adicional ofertada que resultara de valor para el Municipio de San Juan.

En su *Determinación Final*, la Junta de Subastas arguyó que Beckman no destacó ninguna característica como valor añadido en su propuesta más allá de los requerimientos establecidos en el Pliego. Por ello, la Junta de Subastas no le concedió puntos a Beckman. Por su parte, la Junta de Subastas notó que Isla Lab no destacó características de valor añadido en ciertos renglones mientras que en otros sí destacó dichas características. Por las características destacadas, la Junta de Subastas le otorgó a Isla Lab una calificación de 6 puntos para este criterio.

---

[14] Apéndice, página 16.

Inconforme, Beckman presentó una Solicitud de Reconsideración el 18 de julio de 2024.[15] La Junta de Subastas denegó de plano la solicitud de Beckman.

Inconforme aún, Beckman acudió a esta Curia para impugnar la *Determinación Final* de la Junta de Subastas. En particular, señaló los siguientes errores:

**PRIMER ERROR:**
ERRÓ Y ACTUO ARBITRARIAMENTE LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL ADJUDICAR LA BUENA PRO A POR UN PRECIO DE UN MILLÓN CUARENTA Y TRES MIL TRESCIENTOS CINCUENTA Y NUEVE DÓLARES CON VEINTE CENTAVOS ($1,043,359.20) MÁS QUE LA PROPUESTA MENOR, SIN DETALLAR EN QUE BENEFICIA ESTO AL INTERÉS PÚBLICO Y DIO PESO A OTROS ELEMENTOS QUE NO FORMABAN PARTE DEL PLIEGO DE LA RFP 2024-011

**SEGUNDO ERROR:**
ERRÓ Y ACTUO ARBITRARIAMENTE LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL RESTAR PUNTOS A BECKMAN COULTER PUERTO RICO, INC. EN CUANTO A LAS REFERENCIAS PROFESIONALES Y/O COMERCIALES A PESAR DE HABER PRESENTADO REFERENCIAS SUFICIENTES EN LOS RENGLONES 2,3 Y 4

**TERCER ERROR:**
ERRÓ Y ACTU ARBITRARIAMENTE LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL NO OTORGAR A BECKMAN NINGÚN PUNTO EN CUANTO A LAS ESPECIFICACIONES DEL EQUIPO POR INCUMPLIR CON UNO SOLO DE LOS REQUISITOS DE CADA RENGLÓN CUANDO CADA UNO DE LOS RENGLONES TIENE AL MENOS 23 REQUISITOS INDIVIDUALES.

**CUARTO ERROR:**
ERRÓ Y ACTUO ARBITRARIAMENTE LA JUNTA DE SUBASTA DEL MIJNICIPIO DE SAN JUAN AL ESTABLECER UN SISTEMA DE CALIFICACIÓN DONDE UN CRITERIO CON UN VALOR MÁXIMO DE 25 PUNTOS Y QUE CONTIENE MÚLTIPLES REQUISITOS NO TIENE FORMA DE ASIGNACIÓN DE PUNTOS INDIVIDUALES, SINO QUE O TODO O NADA ES CONTRARIO AL SISTEMA DE MEJOR OFERTA.

**QUINTO ERROR:**
ERRÓ Y ACTUO ARBITRARIAMENTE LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL ASIGNAR PUNTUACIÓN POR VALOR AÑADIDO A ISLA LAB EN LOS RENGLONES 1 Y 2 A PESAR DE QUE ISLA LAB NO LO INCLUYÓ NI

---

[15] Apéndice, páginas 625-701.

ARGUMENTO SEGÚN REQUERIDO EN LOS PLIEGOS.

***SEXTO ERROR:***
ERRÓ Y ACTUO ARBITRARIAMENTE LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL OTORGAR VALOR AÑADIDO A ISLA LAB POR OFRECER UN EQUIPO INTEGRADO CUANDO EN LAS COMUNICACIONES OFICIALES DEL RFP 2024-011 SE CONTESTÓ A LOS OTROS PROPONENTES QUE ESTO NO AFECTARÍA SU PUNTUACIÓN.

***SEPTIMO ERROR:***
ERRÓ Y ACTUO ARBITRARIAMENTE LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL OTORGAR VALOR AÑADIDO A ISLA LAB POR INCLUIR PRUEBA DE PANEL INFECCIOSO CUANDO LAS MISMAS NO FUERON OBJETO DE LOS PLIEGOS DEL RFP 2024-011 Y A PESAR DE QUE SE INFORMÓ A LOS PROPONENTES QUE NO OFRECER DICHA CAPACIDAD NO AFECTARIA SU PUNTUACIÓN.

***OCTAVO ERROR:***
ERRÓ Y ACTUO ARBITRARIAMENTE LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL INCLUIR UNA COLUMNA ADICIONAL A LA RÚBRICA DE EVALUACIÓN POR HABER PRESENTADO ISLA LAB UN EQUIPO MODULAR DE FORMA INTEGRADA PARA LOS RENGLONES 3 Y 4 A PESAR DE QUE EL PLIEGO NO LO REQUBRIA DE ESA FORMA.

***NOVENO ERROR:***
ERRO Y ACTUO DE FORMA ARBITRARIA LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL ADJUDICAR LA BUENA PRO A ISLA LAB A PESAR DE QUE NO INCLUYERON EN SU PROPUESTA EL REQUISITO ESENCIAL DE CUALES SON LAS OPCIONES EN CUANTO A LOS EQUIPOS ARRENDADOS CONCLUIDO EL TRANSCURSO DE LOS 60 MESES DE ARRENDAMIENTO.

***DECIMO ERROR:***
ERRÓ Y ACTUO DE FORMA ARBITRARIA LA JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN AL COÑCLUIR QUE LA INCLUSIÓN DE LOS PRECIOS DE LOS CONSUMIBLES DE LOS EQUIPOS ERA UN CRITERIO ESENCIAL PARA LA ADJUDICACIÓN CUANDO NO SE ESTABLECIÓ DE ESA MANERA EN LOS PLIEGOS.

La Junta de Subastas compareció mediante Alegato de la Parte Recurrida. En síntesis, negó las imputaciones hechas por Beckman y negó que su decisión fuese arbitraria, caprichosa o irrazonable. Con el beneficio de ambas partes, resolvemos.

**II.**

**A.**

Es sabido que, al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos ejecutivos y municipales para atender y resolver los asuntos que le han sido delegados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de los organismos administrativos "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente administrativo haya obrado de forma arbitraria, ilegal o irrazonable. En esas circunstancias, entonces, cederá la deferencia que ostenta en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). En torno a esto, en *Torres Rivera v. Policía de PR, supra*, el Tribunal Supremo expuso las normas básicas sobre el alcance de la revisión judicial:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la

actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Torres Rivera v. Policía de PR, supra*, pág. 628.

Así, pues, es norma asentada que el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Torres Rivera v. Policía de PR, supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012). Por lo tanto, **intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción**. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Rolón Martínez v. Supte. Policía, supra*.

**B.**

Es menester recordar que el objetivo de exigir que la contratación y las obras que realiza el Gobierno se efectúe mediante el proceso de subasta, es *proteger los intereses y el dinero público*. A través de las subastas se protegen los intereses del Soberano, ya que procuran conseguir *los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento. Puerto Rico Eco Park, Inc. v. Municipio de Yauco, supra*, pág. 202 DPR 525, 531 (2019).

En cuanto a las subastas de RFP, nuestro Alto Foro Judicial destaca su uso del proceso informal y flexible:

> [s]e destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el gobierno central o municipal y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios. El uso del requerimiento de propuesta –como método alterno a la subasta formal– es común "cuando

> se trata de bienes o servicios especializados que involucran aspectos altamente complejos o cuando existen escasos competidores cualificados". Además de lo anterior, hemos establecido que del RFP debe surgir "los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta". *Id.*, págs. 531-532.

En términos generales, el RFP es un mecanismo de compra cuya característica sobresaliente es que admite negociación. *R & B Power v. ELA*, 170 DPR 606, 621 (2007). Resulta meritorio señalar, que las subastas tradicionales las subastas por RFP que se adjudican por una Junta de Subastas Municipal, están reguladas por el *Código Municipal de Puerto Rico* (Código Municipal)[16] y el *Reglamento para la Administración Municipal 2016* Núm. 8873 (Reglamento Núm. 8873).[17] Estas normas también regulan el derecho de revisión judicial de los licitadores o participantes. *Puerto Rico Eco Park, Inc. v Municipio de Yauco*, *supra*, pág. 534.

En nuestro ordenamiento jurídico, queda a discreción de cada municipio, como entidad con el conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subastas. *AEE v. Maxon*, 163 DPR 434, 440 (2004). Sin embargo, existen unos criterios básicos que deben ser respetados. Como norma general, un municipio adjudicará una subasta sobre suministros de servicio, de compras o de construcción al postor más bajo. Esto es así puesto que, al estar de por medio el desembolso de fondos públicos, se debe promover la inversión adecuada, responsable y eficiente de los recursos económicos del Estado. *Id.*, pág. 440; *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 404 (2009).

Precisamente, el objetivo de las subastas es proteger el erario "consiguiendo la construcción de obras públicas y la adquisición de

---

[16] Ley Núm. 107-2020, según enmendada, conocida como Código Municipal de Puerto Rico, 21 LPRA sec. 4001 *et seq.*
[17] *Reglamento para la Administración Municipal 2016 Núm. 8873 de la Oficina del Comisionado de Asuntos Municipales* de 19 de diciembre de 2016.

servicios de calidad para el gobierno al mejor precio posible". *RBR Const., SE v. AC,* 149 DPR 836 (1999). La consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del Pueblo de Puerto Rico. *Cordero Vélez v. Municipio de Guánica,* 170 DPR 237, 245 (2007).

Cónsono con lo anterior, el Código Municipal dispone en su Artículo 2.040 que *"[l]a Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración entre otros".* 21 LPRA sec. 7216. Establece, además, el precitado Artículo 2.040 en su inciso (a) los criterios de adjudicación

> a. Criterios de adjudicación — Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. [...] ***La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato,*** la responsabilidad económica del licitador, su reputación e integridad comercial, ***la calidad del equipo, producto o servicio*** y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.
> ***La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo … si con ello se beneficia el interés público.*** En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación. [...].
> b. Causas para rechazar pliegos de subastas — La Junta de Subasta podrá rechazar la licitación o las licitaciones que se reciban como resultado de una convocatoria, cuando considere que el licitador carece de responsabilidad[...]. *Id.* (Énfasis suplido).

Por otro lado, el Reglamento Núm. 8873 dispone que como norma general de adjudicación, las subastas se adjudicaran a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento. En adición a esto, el licitador tiene que cumplir con los siguientes requisitos:

(a) Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.

(b) Que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.

***De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación.*** Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura. Secc. 11, Cap. VIII, Parte II.

En cuanto a la adjudicación de la buena pro, el Reglamento Núm. 8873 establece que la Junta tendrá que determinar las ofertas susceptibles de ser consideradas para la adjudicación, tomando como guía las normas establecidas en el Reglamento, así como en la información del Acta de Apertura y el Informe del Recaudador. Secc. 10, Cap. VIII, Parte II. Añade el Reglamento Núm. 8873 *"[l]uego de hacer esa determinación preliminar, la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuales han cumplido con las especificaciones y condiciones solicitadas en la subasta". Id.*

Cónsono, el Municipio de San Juan aprobó mediante la Ordenanza Núm. 12, SERIE 2001-2002, su *Código Administrativo del Municipio de San Juan* (Código Administrativo). El Art. 22.51 del Código Administrativo, dispone el orden general de proceder con la adjudicación. En lo pertinente, el inciso 51.2 dispone:

La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del licitador o proponente para realizar y cumplir con el contrato, la responsabilidad económica del licitador o proponente, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta o solicitud de propuestas.

Por otro lado, el Art. 22.52 del aludido Código establece las normas generales de adjudicación para las subastas de adquisición. En específico, el inciso 52.1 dispone que la adjudicación de las

subastas de adquisición se hará a favor del licitador o proponente que reúna los siguientes requisitos:

a. Las ofertas o propuestas son conforme a las especificaciones y cumplen con los requisitos y condiciones de los pliegos de especificaciones;
b. Los términos de entrega;
c. La habilidad del postor o proponente para realizar y cumplir el contrato que eventualmente se otorgue ente el Municipio y el licitador o proponente agraciado;
d. La responsabilidad económica del licitador o proponente;
e. La reputación e integridad comercial del licitador o proponente;
f. La calidad del servicio, producto o servicio, según aplique;
g. La oferta o propuesta es la más baja en precio, o **aunque no es la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o propuestas, y se justifica el beneficio de interés público de esa adjudicación**. Art. 22.52, Cap. XXII.

Conforme a lo anterior, los municipios pueden adjudicar la subasta al postor que consideren más apropiado aunque no sea el licitador más bajo, si ello representa un beneficio al interés público. Si bien es cierto que las normas y la jurisprudencia invitan a los municipios a considerar las ofertas más bajas, esto no es un mandato o regla inflexible. En vista de ello, la revisión judicial en los casos de subastas se limita a determinar si la adjudicación al licitador agraciado es razonable y se sostiene con la evidencia sustancial que obra en el expediente, *Caribbean Communication v. Pol. de PR,* 176 DPR 978, 1006 (2009).

### III.

Beckman acude ante nos solicitando la revocación de la *Determinación Final* de la Junta de Subastas del RFP-2024-001 sobre *Arrendamiento de Equipos de Química e Inmunología para los Laboratorios Ubicados en Cinco (5) Centros de Diagnóstico y Tratamiento (CDT) y el Hospital Municipal del Departamento de Salud del Municipio de San Juan.* En esencia, Beckman alega que la determinación de la Junta de Subastas fue caprichosa, arbitraria e

irrazonable por haberle adjudicado la *buena pro* a un licitador cuya oferta era más costosa.

Por su parte, la Junta de Subastas arguyó que el propósito del RFP-2024-001 era evaluar, adquirir y adoptar nuevas alternativas de equipos de laboratorio. Adujo la Junta de Subastas que ciertamente, la oferta de Isla Lab era más costosa. No obstante, la Junta de Subastas señaló que Beckman ofertó equipos de laboratorios que no habían sido validados en el mercado local. De igual forma, arguyó la Junta de Subastas que el Municipio de San Juan ya tenía experiencia con el equipo *Access 2* con el cual alegó tener dificultades con el servicio técnico y el despacho de materiales. A continuación, discutiremos de forma conjunta los errores señalados por Beckman.

En el primer error, Beckman alega que la Junta de Subastas no discutió cómo la adjudicación más costosa al erario beneficia el interés público. Como bien señaláramos, en los casos de subastas este foro revisor se limita a determinar si la adjudicación al licitador agraciado es razonable y se sostiene con la evidencia sustancial que obra en el expediente. *Caribbean Communication v. Pol. de PR*, supra. De la evidencia que obra ante nuestra consideración, se desprende que Beckman ofertó el equipo DxC500AU, que no está disponible en el mercado local. También surge de la evidencia que Beckman ofertó el equipo *Access 2*, el mismo equipo que el Municipio de San Juan utiliza en la actualidad y con el cual ha tenido dificultades. De igual forma, surge del expediente ante nuestra consideración que Beckman no detalló el costo de materiales, consumibles y piezas. La Junta de Subastas tomó en consideración todas estas deficiencias no atendían las necesidades del Municipio de San Juan. Por la deferencia que le debemos a la Junta de Subastas, no creemos prudente reemplazar la

determinación de la Junta de Subastas. Por lo tanto, no se cometió el primer error.

En cuanto al segundo error, Beckman alega que el Municipio de San Juan no podía designarse *motu proprio* como referencia para descontarle puntos por experiencias en el contrato actual. Como señaláramos anteriormente, Beckman ofertó el equipo *Access 2*, el mismo equipo que el Municipio de San Juan utiliza. Lógicamente, la Junta de Subastas tomó en consideración su experiencia de primera mano con este equipo la cual, desafortunadamente, no fue una positiva. Sobre el tercer y cuarto error, Beckman alega que la Junta de Subastas fue arbitraria al establecer un sistema de puntuación para el criterio de *Especificaciones del Equipo* y luego adjudicar todo o nada. Del pliego de subasta surge meridianamente claro que si los licitadores no cumplían con todas las especificaciones obtendrían una puntuación total de 0. Creemos que no se cometió el error imputado.

El quinto, sexto y séptimo error son referentes al criterio de *Valor Añadido*. Alega Beckman que la Junta de Subastas le adjudicó puntos a las ofertas de Isla Lab cuando estas no eran parte del pliego mientras que al propio Beckman no le adjudicaron puntos aun cuando incluyó los requerimientos establecidos en el pliego. La Junta de Subastas razonó que el criterio de valor añadido le permite a los licitadores presentar características o elementos adicionales a los ya solicitados por el Municipio de San Juan. Beckman se limitó a presentar las características o elementos solicitados en el pliego, mientras que Isla Lab presentó características o elementos adicionales a los ya solicitados. Consideramos que no se cometieron los errores señalados.

Sobre el octavo error, Beckman alegó que la Junta de Subastas fue irrazonable y arbitraria por evaluar en conjunto los renglones 3 y 4 contrario a la rubrica presentada en el pliego para

beneficiar a Isla Lab. Como bien señaló la Junta de Subastas, en el *Addendum #5* se atendió este asunto, específicamente, porque Beckman preguntó sobre el beneficio de crear dos configuraciones funcionales para las partidas 3 y 4. Además, el *Addendum #7* atendió una interrogante por parte de Isla Lab sobre la posibilidad de cotizar las partidas 3 y 4 en conjunto. La Junta de Subastas contestó que, de así desearlo, los licitadores podían cotizar ambas partidas de manera conjunta. Así las cosas, no consideramos que la Junta de Subastas haya cometido el alegado error.

En el noveno error, Beckman alega que ninguno de los licitadores presentó alternativas en cuanto a qué pasaría con el equipo una vez culmine el periodo de arrendamiento, en contravención con la Ley Núm. 76 del 13 de agosto de 1994, según enmendada, conocida como Ley para Regular los Contratos de Arrendamiento de Bienes Muebles. Por su parte, la Junta de Subastas señala que esto no es un criterio de evaluación, sino que meramente se les informó a los licitadores sobre las opciones que el Municipio tendría una vez culmine el periodo de arrendamiento. Además, como bien señala la Junta de Subastas, la Ley Núm. 76 del 13 de agosto de 1994 hace referencia al contrato entre la entidad gubernamental y el licitador agraciado. Nada menciona sobre la adjudicación de la subasta. Concurrimos con la Junta de Subastas en que no se cometió el noveno error.

Finalmente, Beckman alega en su décimo error que la Junta de Subastas erró al concluir que los precios de los consumibles de los equipos eran un criterio esencial para la adjudicación cuando esto no surgía del pliego. En el pliego de subasta la Junta de Subastas dispuso que "[l]a propuesta debe incluir un listado de materiales, controles, reactivos, etc. con sus precios, con la cantidad mensual que estimaron en el momento de licitar y sea necesario para el volumen especificado de muestras en esta solicitud de

propuesta[...]".[18] No queda más sino concluir que, en efecto, surgía del pliego que los precios de los consumibles de los equipos era un criterio esencial. Por lo tanto, no se cometió el error alegado.

Ante este cuadro, solo nos queda confirmar la *Determinación Final* de la Junta de Subastas.

**IV.**

Por los fundamentos antes expresados, se **confirma** la *Determinación Final* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] Apéndice, página 62.